**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FREDERICK LEE,          )    NO. CV 08-3248-PA(E)
                          )
          Petitioner,   )
                          )
   v.               )    REPORT AND RECOMMENDATION OF
                          )
VICTOR M. ALMAGER, Warden,  )    UNITED STATES MAGISTRATE JUDGE
                          )
          Respondent.   )
                          )
_____)

    This Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

    Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on May 15, 2008. On July 24, 2008, Petitioner filed a "Motion for Habeas Corpus Proceedings to Be Stayed and Held in Abeyance Pending Exhaustion of Additional Claims" ("Motion

for a Stay"). On August 13, 2008, Respondent filed an Opposition. On August 14, 2008, the Court issued an order requiring Petitioner to file: (1) an Addendum to the Motion for a Stay identifying the exhibits attached to the Motion for a Stay by exhibit number; and (2) a Declaration containing certain specified information. On September 15, 2008, Petitioner filed: (1) a "Declaration of Frederick Lee in Support of Motion for Stay and Abeyance"; and (2) a "Request for Judicial Notice."

On October 8, 2008, the Court issued an order granting the Motion for a Stay. The order required that Petitioner notify the Court in writing of the California Supreme Court's ruling on Petitioner's state habeas petition within forty-five days of the date of that court's ruling.

On July 6, 2009, the Magistrate Judge issued an Order to Show Cause, noting that it appeared from the California Appellate Cases website that the California Supreme Court had denied Petitioner's state habeas petition on May 13, 2009, but Petitioner had not yet filed the requisite notification of that ruling. On July 21, 2009, Petitioner filed a response to the Order to Show Cause. On the same date, the Court discharged the Order to Show Cause and ordered Respondent to file an Answer to the Petition.

On December 18, 2009, Respondent filed an Answer, asserting, inter alia, that Grounds Two, Four and Five of the Petition were unexhausted. On February 3, 2010, Petitioner filed a Traverse, in which Petitioner stated, inter alia, that he had alleged Grounds Two,

Three, Four and Five of the Petition "in an amended petition to the California Supreme Court" assertedly filed in November of 2008 in *In re Frederick Lee*, California Supreme Court case number S168034.  On February 5, 2010, the Magistrate Judge issued a Minute Order observing that the California Supreme Court's docket in the referenced case did not reflect the filing of any amended petition, and ordering Petitioner to submit proof that he filed such an amended petition in the California Supreme Court.  On March 10, 2010, Petitioner filed a document admitting that no amended petition had been filed in *In re Frederick Lee*, California Supreme Court case number S168034.

On March 17, 2010, the Magistrate Judge issued a Minute Order requiring Respondent to file a Supplemental Answer addressing the merits of all of the claims alleged in the Petition, as deemed amended to include the new claims identified in the Court's Order Granting Motion for Stay filed October 8, 2008.[1]  On July 29, 2010, Respondent filed a Supplemental Answer.  On September 14, 2010, Petitioner filed a Supplemental Reply.

On September 21, 2010, the Magistrate Judge issued a Minute Order, stating an intent to conduct an evidentiary hearing and appointing counsel for Petitioner.  At a status conference on October 22, 2010, the Magistrate Judge scheduled an evidentiary hearing for January 27, 2011.  The Magistrate Judge informed counsel that the hearing would concern Petitioner's claim that Petitioner's trial counsel assertedly rendered ineffective assistance in relation

---

[1]    Petitioner asserted these claims in his Motion for a Stay and supporting Declaration.

3

to Petitioner's plea, allegedly by:

    a. falsely informing Petitioner, prior to the plea, that alleged alibi witness LaTonya Strickland was unavailable to testify at trial; and

    b. failing to inform Petitioner, prior to the plea, that alleged eyewitness George Cowell assertedly could identify someone other than Petitioner as the shooter, and hence allegedly could attest to Petitioner's "actual innocence."

On December 2, 2010, Respondent filed a "Motion for Reconsideration of Order Granting Evidentiary Hearing" ("Motion for Reconsideration"). On December 27, 2010, the parties filed a joint motion for discovery, which the Magistrate Judge granted on December 28, 2010.

On January 4, 2011, pursuant to the parties' stipulation, the Court extended the time for Petitioner to file an opposition to the Motion for Reconsideration to January 10, 2011. On January 11, 2011, pursuant to a second stipulation, the Court extended the time for Petitioner to file an opposition to the Motion for Reconsideration to February 23, 2011.

On January 20, 2011, the parties filed a joint motion to continue the evidentiary hearing. On January 24, 2011, the Court continued the evidentiary hearing to March 30, 2011. On March 24, 2011, the parties filed a joint motion to continue the evidentiary hearing to August 5,

2011, which the Court granted by Minute Order filed March 24, 2011. Also on March 24, 2011, pursuant to another stipulation, the Court extended the time for Petitioner to file an opposition to the Motion for Reconsideration to April 22, 2011. On April 27, 2011, pursuant to another stipulation, the Court extended the time for Petitioner to file an opposition to the Motion for Reconsideration to April 29, 2011. On May 23, 2011, Respondent filed a "Supplement to Motion for Reconsideration of Order Granting Evidentiary Hearing." As of the date of this Report and Recommendation, Petitioner has not filed any opposition to the Motion for Reconsideration.

**BACKGROUND**

A Complaint charged Petitioner with: (1) attempted murder (Count 1); (2) assault with a firearm on Anthony Peele (Count 2); (3) assault with a firearm on LaToya Knighton (Count 3); (4) possession of a firearm by an ex-felon (Count 4); (5) burglary (Count 5); and (6) making a criminal threat (Count 6) (Clerk's Transcript ["C.T."] 38; Petition, Ex. B, pp. 29-30).[2]

At a preliminary hearing on May 5, 2005, Anthony Peele testified that, on the evening of January 14, 2005, Peele had just exited the residence where Peele lived with Petitioner's ex-wife, LaToya Knighton, when Petitioner ran up and began shooting at Peele

---

[2] Petitioner's exhibits do not bear consecutive page numbers. <u>See</u> Local Rule 11-5.2 (requiring exhibits to be numbered consecutively to the principal document). The Court uses the internal page numbers in the exhibits.

(Petition, Ex. A, pp. 4-9, 15-16, 20-21).  Peele said Knighton came out and asked "Why are you shooting at my husband?" and "Frederick, why are you doing this?" (id., pp. 10-11, 18).  Petitioner allegedly moved to the side and fired three or four more shots around Knighton (id., pp. 10-11, 17).

Following the hearing, Petitioner's counsel argued that the evidence failed to show an assault with a firearm on Knighton (Petition, Ex. B, pp. 29-30).  The court held Petitioner to answer on the charges of attempted murder (Count 1), assault on Peele (Count 2), and possession of a firearm by an ex-felon (Count 6), and dismissed the other counts, including the charge of assault on Knighton (Count 3) (Petition, Ex. A, pp. 30-31; C.T. 44).

On May 19, 2005, the prosecution filed an Information charging Petitioner with the wilful, deliberate and premeditated attempted murder of Peele (Count 1), assault with a firearm on Peele (Count 2), assault with a firearm on Knighton (Count 3), and possession of a firearm by an ex-felon (Count 6) (C.T. 33-37).[3]  The Information also alleged, with respect to the attempted murder, that Petitioner: (1) personally and intentionally discharged a firearm which proximately caused great bodily injury and death within the meaning of California Penal Code section 12022.53(d); (2) personally and intentionally discharged a firearm within the meaning of California Penal Code section 12022.53(c); and (3) personally used a firearm within the meaning of California Penal Code section 12022.53(b) (C.T.

_____

[3]     The Information did not contain any Counts 4 or 5.

33-37).  The Information further alleged that: (1) with respect to the assault on Peele, Petitioner personally inflicted great bodily injury within the meaning of California Penal Code sections 12022.7(a) and 1192.7(c)(8); and (2) with respect to both assaults, Petitioner personally used a firearm within the meaning of California Penal Code sections 12022.5, 1192.7(c) and 667.5(c) (C.T. 34-35).

On July 18, 2005, pursuant to a plea agreement, Petitioner pled nolo contendere to attempted murder (Count 1) and assault with a firearm on Knighton (Count 3), and admitted that Petitioner had personally used a firearm in the commission of the attempted murder within the meaning of California Penal Code section 12022.53(b) (Petition, Ex. B, pp. 28-29; C.T. 61-63; see People v. Lee, 2006 WL 2440848, at *1 (Cal. App. Aug. 24, 2006)).  The court sentenced Petitioner to the midterm of seven years on the attempted murder count and a three-year concurrent term on the assault count, and added ten years pursuant to California Penal Code section 12022.53(b), for a total prison term of seventeen years (Petition, Ex. B, pp. 29-32; C.T. 64-65, 85).  The court also imposed several fines, including a domestic violence fine (Petition, Ex. B, pp. 30-33; C.T. 63-64).

On August 24, 2006, the California Court of Appeal vacated the domestic violence fine and remanded for the preparation of an amended minute order and abstract of judgment so stating, but otherwise affirmed the judgment (Respondent's Lodgment 5; see People v. Lee, 2006 WL 2440848, at *1).  Petitioner did not file a petition for review in the California Supreme Court (Petition, p. 3).

///

Petitioner filed a habeas corpus petition in the Los Angeles County Superior Court on April 20, 2007, which that court denied in a reasoned order on June 8, 2007 (Respondent's Lodgments 12, 13). Petitioner filed a habeas corpus petition in the California Court of Appeal on September 4, 2007, which that court denied summarily on September 20, 2007 (Respondent's Lodgments 6, 7).  Petitioner filed a petition for habeas corpus in the California Supreme Court on December 10, 2007, which that court denied summarily on June 18, 2008 (Respondent's Lodgments 8, 9).

Following the filing of the present Petition on May 15, 2008, Petitioner filed a second habeas petition in the Los Angeles County Superior Court on September 2, 2008 (Respondent's Lodgment 14).  On September 25, 2008, Petitioner filed an amended petition in the Superior Court (Respondent's Lodgment 15).  On November 4, 2008, while his second Superior Court petition was pending, Petitioner filed a second habeas corpus petition in the California Supreme Court (Respondent's Lodgment 10).  On May 13, 2009, the California Supreme Court denied this petition with citations to In re Robbins, 18 Cal. 4th 770, 77 Cal. Rptr. 2d 153, 959 P.2d 311 (1998), and In re Clark, 5 Cal. 4th 750, 21 Cal. Rptr. 2d 509, 855 P.2d 729 (1993), signifying that the court deemed the petition to be untimely (Respondent's Lodgment 11).[4]  On December 11, 2009, the Superior Court denied Petitioner's second petition filed in that court in a reasoned order

---

[4]    See Walker v. Martin, 131 S. Ct. 1120, 1124 (2011); Gaston v. Palmer, 417 F.3d 1030, 1036-37 (9th Cir. 2005), modified, 447 F.3d 1165 (9th Cir. 2006), cert. denied, 549 U.S. 1134 (2007); Bennett v. Mueller, 322 F.3d 573, 578-79 (9th Cir., cert. denied, 540 U.S. 938 (2003).

8

1 (Respondent's Lodgment 13).

2

3                          **PETITIONER'S CONTENTIONS**

4

5      1.  Petitioner's plea proceedings allegedly violated due process

6 and Petitioner's right to effective counsel, because:

7

8              a.  Petitioner's counsel allegedly rendered ineffective

9              assistance, by assertedly: (1) advising Petitioner that

10             Petitioner would receive a sentence of eleven to

11             fourteen years if Petitioner pled guilty; (2) failing

12             to object to the alleged increase in the plea offer to

13             seventeen years; (3) leading Petitioner to believe the

14             original deal could be reinstated; and (4) failing to

15             advise Petitioner that he was pleading to two

16             "strikes"; and

17

18             b.  The trial court allegedly violated state law by

19             persuading the prosecutor to increase the plea offer to

20             seventeen years

21

22 (Petition, Ground One);

23

24     2.  Petitioner's trial counsel allegedly rendered ineffective

25 assistance by "fail[in]g to press for dismissal" of Count Three

26 (Petition, Ground Two);

27 ///

28 ///

1    3.   Allegedly suggestive identification procedures assertedly

2    violated due process; Petitioner's trial counsel allegedly rendered

3    ineffective assistance, assertedly by failing to move for a pretrial

4    live line-up and failing to move to suppress Peele's identification of

5    Petitioner (Petition, Ground Three);

6

7    4.   Petitioner's trial counsel allegedly ineffectively failed to

8    challenge Petitioner's arrest (Petition, Ground Four);

9

10   5.   Petitioner's appellate counsel allegedly rendered ineffective

11   assistance, by assertedly failing to raise on appeal the issues

12   asserted in Grounds One, Two, Three and Four of the Petition and by

13   failing to advise Petitioner to file a supplemental brief (Petition,

14   Ground Five);

15

16   6.   Petitioner's plea allegedly was involuntary because

17   Petitioner's trial counsel assertedly rendered ineffective assistance

18   by allegedly failing to inform Petitioner, prior to the plea, that:

19

20        a.   alleged alibi witness LaTonya Strickland was available

21             to testify at trial; and

22

23        b.   alleged eyewitness George Cowell assertedly could

24             identify someone other than Petitioner as the shooter,

25             and hence allegedly could attest to Petitioner's

26             "actual innocence"

27   ///

28   ///

10

(Ground Six, as described in October 8, 2008 Order Granting Motion for Stay);[5]

7.   Petitioner's trial counsel allegedly rendered ineffective assistance in the manner asserted in Ground Six (Ground Seven, as described in October 8, 2008 Order Granting Motion for Stay);

8.   Petitioner assertedly is actually innocent (Ground Eight, as described in October 8, 2008 Order Granting Motion for Stay); and

9.   The trial court allegedly sentenced Petitioner to a three-year term on a charge of aggravated assault on Knighton which allegedly was not charged in the Information (Ground Nine, as described in October 8, 2008 Order Granting Motion for Stay).

## STANDARD OF REVIEW

A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

---

[5]   The Court has numbered the Grounds for relief identified in the Court's October 8, 2008 Order Granting Motion for Stay sequentially to the Grounds alleged in the Petition.

presented in the State court proceeding."  28 U.S.C. § 2254(d);
Woodford v. Visciotti, 537 U.S. 19, 24-26 (2002); Early v. Packer,
537 U.S. 3, 8 (2002); Williams v. Taylor, 529 U.S. 362, 405-09 (2000).

"Clearly established Federal law" refers to the governing legal
principle or principles set forth by the Supreme Court at the time the
state court renders its decision.  Lockyer v. Andrade, 538 U.S. 63
(2003).  A state court's decision is "contrary to" clearly established
Federal law if: (1) it applies a rule that contradicts governing
Supreme Court law; or (2) it "confronts a set of facts. . . materially
indistinguishable" from a decision of the Supreme Court but reaches a
different result.  See Early v. Packer, 537 U.S. at 8 (citation
omitted); Williams v. Taylor, 529 U.S. at 405-06.

Under the "unreasonable application prong" of section 2254(d)(1),
a federal court may grant habeas relief "based on the application of a
governing legal principle to a set of facts different from those of
the case in which the principle was announced."  Lockyer v. Andrade,
538 U.S. at 76 (citation omitted); see also Woodford v. Visciotti,
537 U.S. at 24-26 (state court decision "involves an unreasonable
application" of clearly established federal law if it identifies the
correct governing Supreme Court law but unreasonably applies the law
to the facts).  A state court's decision "involves an unreasonable
application of [Supreme Court] precedent if the state court either
unreasonably extends a legal principle from [Supreme Court] precedent
to a new context where it should not apply, or unreasonably refuses to
extend that principle to a new context where it should apply."
Williams v. Taylor, 529 U.S. at 407 (citation omitted).

1    "In order for a federal court to find a state court's application
2    of [Supreme Court] precedent 'unreasonable,' the state court's
3    decision must have been more than incorrect or erroneous." Wiggins v.
4    Smith, 539 U.S. 510, 520 (2003) (citation omitted).  "The state
5    court's application must have been 'objectively unreasonable.'"  Id.
6    at 520-21 (citation omitted); see also Waddington v. Sarausad, 555
7    U.S. 179, 129 S. Ct. 823, 831 (2009); Davis v. Woodford, 384 F.3d 628,
8    637-38 (9th Cir. 2004), cert. dism'd, 545 U.S. 1165 (2005).  "Under
9    § 2254(d), a habeas court must determine what arguments or theories
10   supported, . . . or could have supported, the state court's decision;
11   and then it must ask whether it is possible fairminded jurists could
12   disagree that those arguments or theories are inconsistent with the
13   holding in a prior decision of this Court." Harrington v. Richter,
14   131 S. Ct. 770, 786 (2011).  This is "the only question that matters
15   under § 2254(d)(1)." Id. (citation and internal quotations omitted).
16   Habeas relief may not issue unless "there is no possibility fairminded
17   jurists could disagree that the state court's decision conflicts with
18   [the United States Supreme Court's] precedents." Id. at 786-87 ("As a
19   condition for obtaining habeas corpus from a federal court, a state
20   prisoner must show that the state court's ruling on the claim being
21   presented in federal court was so lacking in justification that there
22   was an error well understood and comprehended in existing law beyond
23   any possibility for fairminded disagreement.").

24

25       In applying these standards, the Court looks to the last reasoned
26   state court decision.  See Delgadillo v. Woodford, 527 F.3d 919, 925
27   (9th Cir. 2008).  Where no reasoned decision exists, as where the
28   state court summarily denies a claim, "[a] habeas court must determine

what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (citation, quotations and brackets omitted).

**DISCUSSION**

For the reasons discussed below,[6] the Petition is denied and dismissed with prejudice.

**I.   Ground Two Is Procedurally Defaulted; Grounds Three and Six Are Not Procedurally Defaulted.**

Petitioner raised the claims asserted in Grounds Two, Three and Six of the present Petition in his second California Supreme Court habeas petition (see Respondent's Lodgment 10).  As indicated above, the California Supreme Court denied that petition with a citation to In re Robbins and In re Clark, signifying that the petition was untimely.  Respondent asserts that Grounds Two, Three and Six of the Petition are procedurally defaulted.

─────────────────

[6]     The Court has read, considered and rejected all of Petitioner's contentions.  The Court discusses Petitioner's principal contentions herein.  The Court assumes arguendo the timeliness of Petitioner's claims.  See Van Buskirk v. Baldwin, 255 F.3d 974, 976 (9th Cir.), amended and superseded on other grounds, 265 F.3d 1080 (9th Cir. 2001), cert. denied, 535 U.S. 950 (2002) (declining to address statute of limitations issue where habeas petition lacked merit).

14

1   A federal court may be barred from reviewing the merits of a
2   habeas petitioner's claim when the petitioner has violated a state law
3   procedural rule.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991).  "For
4   the procedural default rule to apply, however, the application of the
5   state procedural rule must provide 'an adequate and independent state
6   law basis' on which the state court can deny relief."  <u>Park v.</u>
7   <u>California</u>, 202 F.3d 1146, 1151 (9th Cir.), <u>cert. denied</u>, 531 U.S. 918
8   (2000) (citation omitted).  If the court finds an independent and
9   adequate state procedural ground, "federal habeas review is barred
10  unless the prisoner can demonstrate cause for the procedural default
11  and actual prejudice, or demonstrate that the failure to consider the
12  claims will result in a fundamental miscarriage of justice."  <u>Noltie</u>
13  <u>v. Peterson</u>, 9 F.3d 802, 804-05 (9th Cir. 1993); <u>see</u> <u>Coleman v.</u>
14  <u>Thompson</u>, 501 U.S. at 750; <u>Park v. California</u>, 202 F.3d at 1150.

15

16  California's timeliness bar constitutes an "independent" state
17  ground.  <u>Bennett v. Mueller</u>, 322 F.3d 573, 581-83 (9th Cir.), <u>cert.</u>
18  <u>denied</u>, 540 U.S. 938 (2003) ("<u>Bennett</u>").  With respect to the issue of
19  adequacy, the <u>Bennett</u> Court held that the state bore the burden of
20  proving that a procedural bar had been "regularly and consistently
21  applied."  <u>Id.</u> at 585-86.  The <u>Bennett</u> Court endorsed the following
22  burden-shifting scheme:

23

24      Once the state has adequately pled the existence of an
25      independent and adequate state procedural ground as an
26      affirmative defense, the burden to place that defense in
27      issue shifts to the petitioner.  The petitioner may satisfy
28      this burden by asserting specific factual allegations that

1     demonstrate the inadequacy of the state procedure, including

2     citation to authority demonstrating inconsistent application

3     of the rule.  Once having done so, however, the ultimate

4     burden is the state's.

5

6  Id. at 586.

7

8     Recently however, the United States Supreme Court held that

9  California's timeliness bar constituted an adequate state ground

10 sufficient to support a procedural default, holding that the rule was

11 both "firmly established" and "regularly followed."  Walker v. Martin,

12 131 S. Ct. at 1128-29.[7]  The Walker Court did not apply a burden-

13 shifting scheme such as that endorsed in Bennett.

14

15    Assuming arguendo the Bennett framework remains applicable after

16 Walker v. Martin, Respondent sufficiently has pleaded the timeliness

17 bar.  However, Petitioner has not met his interim burden to

18 demonstrate the inadequacy of the timeliness bar.  See Bennett, 322

19 F.3d at 586.[8]  Nor has Petitioner shown that California's timeliness

20

21         [7]    The Petitioner in Walker v. Martin did not dispute that
22 California's timeliness rule was an "independent" state ground.
   See Walker v. Martin, 131 S. Ct. at 1127.
23

24         [8]    Indeed, it is difficult to envision how a petitioner
   could satisfy Bennett's interim burden with respect to
25 California's timeliness rule.  The Walker Court rejected all
   arguments that California's timeliness rule was not firmly
26 established and regularly followed.  Walker v. Martin, 131 S. Ct.
   at 1128-29; see Martinez v. McGrath, 2011 WL 837145, at *3 (E.D.
27 Cal. Mar. 9, 2011) (holding that Walker v. Martin necessarily
   required that the district court find California's timeliness
28 rule to be firmly established and regularly followed).

1  bar operates to discriminate against claims of federal rights.  <u>See</u>

2  <u>Walker v. Martin</u>, 131 S. Ct. at 1130-31 (reiterating that state

3  procedural rules which discriminate against claims of federal rights

4  do not suffice to support a procedural bar).

5

6      However, <u>after</u> the California Supreme Court ruled that

7  Petitioner's claims asserted in Grounds Two, Three and Six were

8  untimely, the Superior Court denied Grounds Three and Six on the

9  merits (<u>see</u> Respondent's Lodgment 13).[9]  In <u>Ylst v. Nunnemaker</u>, 501

10  U.S. 797, 806 (1991), the Supreme Court held it proper to "look

11  through" an unreasoned state court decision to the last reasoned

12  decision, which rested upon a state procedural default, "unless [the

13  petitioner] has carried his burden of adducing strong evidence that

14  [a] subsequent court reached the merits of the federal claim."  Here,

15  Petitioner's second Superior Court petition and the Superior Court's

16  order denying that petition on the merits provide the requisite

17  "strong evidence."  Therefore, Grounds Three and Six are not

18  procedurally defaulted.

19

20      With regard to Ground Two, a petitioner can overcome a procedural

21  default by demonstrating cause for the default and resulting actual

22  prejudice.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Smith</u>

23  <u>v. Baldwin</u>, 510 F.3d 1127, 1146 (9th Cir. 2007) (en banc), <u>cert.</u>

24  <u>denied</u>, 129 S. Ct. 37 (2008).  Petitioner makes no argument that cause

25

26      [9]   Petitioner's second Superior Court petition, as
    amended, was virtually identical to his second California Supreme
27  Court petition, except that the California Supreme Court petition
    included exhibits not attached to the Superior Court petition or
28  amended petition (<u>see</u> Respondent's Lodgments 10, 14, 15).

1  and prejudice excuse his default with respect to Ground Two of the

2  Petition.

3

4      To qualify for the "fundamental miscarriage of justice"

5  exception, Petitioner must show that a constitutional violation has

6  "probably resulted in the conviction of one who was actually

7  innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995); Murray v.

8  Carrier, 477 U.S. 478, 496 (1986); Cook v. Schriro, 538 F.3d 1000,

9  1028 (9th Cir. 2008), cert. denied, 129 S. Ct. 1033 (2009).  To show

10 actual innocence sufficient to overcome a procedural default, a

11 petitioner must furnish "'new reliable evidence . . . that was not

12 presented at trial.'" House v. Bell, 547 U.S. 518, 537 (2006)

13 (quoting Schlup v. Delo, 513 U.S. at 324; ellipses added); Griffin v.

14 Johnson, 350 F.3d 956, 963 (9th Cir. 2003), cert. denied, 541 U.S. 998

15 (2004).  Petitioner must show "that it is more likely than not that no

16 reasonable juror would have found petitioner guilty beyond a

17 reasonable doubt." Schlup v. Delo, 513 U.S. at 327.

18

19     Petitioner appears to contend that the proposed testimony of

20 Strickland and Cowell purportedly show Petitioner's innocence.

21 However, Petitioner has produced no reliable evidence of actual

22 innocence.  Petitioner has offered only unsworn hearsay.  See Herrera

23 v. Collins, 506 U.S. 390, 417 (1993) (hearsay affidavits in support of

24 actual innocence claim "particularly suspect"); Teahan v. Almager, 383

25 Fed. App'x 615 (9th Cir. 2010) (unsworn statements of purported alibi

26 witnesses insufficient to show actual innocence); Mendoza v. Felker,

27 2010 WL 3034658, at *14 n.13 (C.D. Cal. July 25, 2010), adopted, 2010

28 WL 3034656 (C.D. Cal. July 29, 2010) (inadmissible hearsay

18

insufficient to show actual innocence); <u>Nguyen v. Evans</u>, 2010 WL
1222647, at *8 (C.D. Cal. Jan. 25, 2010), <u>adopted</u>, 2010 WL 1222639
(C.D. Cal. Mar. 22, 2010) (same); <u>Ruiz v. Gonzalez</u>, 2009 WL 3233558,
at *3 (C.D. Cal. Oct. 2, 2009) (unsworn statement offered in support
of actual innocence claim not reliable).  Therefore, Petitioner has
failed to show that his alleged "actual innocence" excuses his
procedural default.  Ground Two of the Petition is procedurally
defaulted.  <u>See</u> <u>Walker v. Martin</u>; <u>Collier v. Tilton</u>, 2011 WL 1134717,
at *12 (E.D. Cal. Mar. 28, 2011); <u>Martinez v. McGrath</u>, 2011 WL 837145,
at *3 (E.D. Cal. Mar. 9, 2011).

## II.  **Petitioner Is Not Entitled to Habeas Relief on Ground One of the Petition.**

### A.  **Factual Background**

The day trial was to start, the prosecutor told the judge that
the prosecution had offered Petitioner a plea bargain calling for a
nineteen-year prison term (Respondent's Lodgment 2, Reporter's
Transcript of Proceedings on July 18, 2005 ["R.T."] 17-18).  Following
the noon recess, Petitioner's counsel indicated that he had discussed
the offer with Petitioner, and that Petitioner had discussed the case
with Petitioner's mother (R.T. 19).  Petitioner's counsel asked
Petitioner what Petitioner wanted to do (R.T. 19).  Petitioner
discussed the matter off the record with his counsel (R.T. 19-20).
When the proceedings in court resumed, the following occurred:
///
///

1    [Petitioner's counsel]:  The People have offered, Count 1 -
2    is it Count 1?

3

4    [The prosecutor]:  Yes.

5

6    [Petitioner's counsel]:  How are we arriving at two strikes?

7

8    [The prosecutor]:  Count 1 for the midterm.  Plus we would
9    change the gun allegation from the 10-20-life to the 3-4-10.
10   It would be midterm, plus 10 years, for 17 years.  Then he
11   would plead to the 245(a)(2) against the second victim, and
12   it would run concurrent.

13

14   The Court:  All right.  That's how they're doing it.  So
15   that would be two strikes.

16

17 (R.T. 20-21).

18

19   After Petitioner conferred again with his counsel, the following
20 occurred:

21

22   [Petitioner's counsel]:  Have we reached an understanding?

23

24   The Defendant:  Yes.

25

26   [Petitioner's counsel]:  Okay, Judge, I think Mr. Lee will
27   go ahead and accept that, to avoid the possibility of a life
28   sentence, plus an additional 25 to life.

1    The Court:  It's actually more than 25 to life.

2

3    . . .

4

5    The Court:  All right.  Is that what you want to do,

6    Mr. Lee?  Do you want to accept the offer?  Is it going

7    to be the 17-year offer?

8

9    [Petitioner's counsel]:  I believe so, yes.

10

11   [The Court]:  Mr. [Prosecutor], you may take the plea.  And

12   if that happens, then it happens.  Otherwise, we'll keep

13   going.

14

15   [The prosecutor]:  Okay.

16

17        Frederick Lee, is that your true and correct name?

18

19   The Defendant:  Yes.

20

21   [The prosecutor]:  In case BA277371, you're charged in

22   Count 1 with attempted premeditated murder.  You're charged

23   in Count 2 with assault with a firearm.  You're charged in

24   Count 3 with assault with a firearm, and you're charged in

25   the last count with possession of a firearm by a felon.

26   It's alleged, pursuant to Count 1, that you personally used

27   a firearm, as well as pursuant to Counts 2 and 3.

28   ///

1      As the case is situated right now, the maximum you
2   could receive on this case by our calculations is life, plus
3   27 years 4 months to life.

4

5      Do you understand the charges and allegations and the
6   max as I have currently explained it to you?

7

8   The Defendant:  Yes.

9

10  [The prosecutor]:  We've worked out a plea agreement.  The
11  terms of that agreement are as follows:  You will be
12  pleading to Count 1, which is attempted murder.  We are
13  going to strike the premeditated allegation, which makes it
14  a life term.

15

16      So instead of life, the max you're going to get is the
17  midterm, which is seven years.  Then you're going to admit a
18  use allegation of a gun.  Instead of the one that carries 25
19  to life, we're going to amend this, and you're going to
20  admit the one that carries the max of ten years.

21

22  The Court:  12022.53(b).

23

24  [The prosecutor]:  12022.5.

25

26  The Court:  Okay.

27  ///

28  ///

22

1    [The prosecutor]:  We can do 53(b).  That's fine too, Your

2    Honor.

3

4    The Court:  That's a mandatory ten years.  That's the better

5    one.

6

7    [The prosecutor]:  All right.  53(b).  So it's ten years.

8

9        Then as to Count 3, you're going to admit that charge,

10   and it's going to run concurrent.

11

12       Is that your understanding as to what is going to

13   happen here today?

14

15   The Defendant:  Yeah.

16

17 (R.T. 21-23).

18

19   Petitioner waived his constitutional rights to a trial, to

20 confront and cross-examine witnesses and to subpoena witnesses, and

21 relinquished his privilege against self-incrimination (R.T. 23-24).

22 The following occurred:

23

24   [The prosecutor]:  A violation of Penal Code section -- of

25   attempted murder with the 12022.53(b) carries a maximum

26   confinement time of 19 years.  In addition, the 245(a)(2)

27   carries a maximum confinement time, because you get one-

28   third of the midterm, an addition of one, for a total max of

23

 1      20 years.  You're going to get 17 years.

 2

 3      The Defendant:  Yes.

 4

 5          The Court:  He's saying by reducing it -- they're

 6      reducing it from what it was -- the maximum you're facing is

 7      20, and they're going to require you to plead to 17.

 8

 9          Do you understand that?

10

11  (R.T. 24).

12

13      Petitioner conferred with his counsel (R.T. 24).  The following

14  occurred:

15

16      The Defendant:  So I'm going to do 17?

17

18      The Court:  You're going to do 85 percent of 17.

19

20      [The prosecutor]:  I just have to tell you what the max

21      is.  The max is 20.  You're going to do 17 -- actually,

22      85 percent of 17.

23

24          Do you understand that?

25

26      The Defendant:  Yeah.

27

28  (R.T. 25).

1          After the prosecutor provided further advisements, the prosecutor

2   asked Petitioner:  "Are you pleading no contest freely and

3   voluntarily, because you believe it to be in your best interest?"

4   (R.T. 26).  Petitioner conferred with his counsel (R.T. 26).  The

5   following occurred:

6

7          [The prosecutor]:  I'll repeat the question.  Mr. Lee, are

8          you pleading no contest freely and voluntarily, because you

9          believe it to be in your own best interest?

10

11         The Defendant:  Yes.

12

13         [The prosecutor]:  Have you had sufficient time to discuss

14         the facts of this case, any potential defenses you might

15         have, and your constitutional rights with your attorney?

16

17         The Defendant:  Yes.

18

19         [The prosecutor]:  Do you understand for all practical

20         purposes the court treats a no contest plea just the same as

21         a guilty plea and will find you guilty based on your plea?

22

23         The Defendant:  Yeah.

24

25         [The prosecutor]:  Do you have any questions?

26

27         The Defendant:  No.

28   ///

1    [The prosecutor]:  Does the Court have any questions?

2

3    The Court:  No, but I just wanted to make sure:  Do you have

4    any questions, Mr. Lee, about this plea?  Because once the

5    plea is done, that's it.  Is there any questions [sic] you

6    have?

7

8    The Defendant: (no audible response.)

9

10   The Court:  You're shaking your head.  Is that "no"?

11

12   The Defendant:  No.

13

14   [The prosecutor]:  I would ask, just for the record to

15   reflect:  you're absolutely sure this is what you want to do

16   at this point?  "Yes"?  "No"?

17

18   The Defendant:  It's not what I want to do, but --

19

20   [Petitioner's counsel]:  It's what you think is in your best

21   interest?

22

23   The Defendant:  Yeah.

24

25 (R.T. 27-28).

26

27   Petitioner then pled no contest to the attempted murder and to

28 the assault with a firearm on Knighton, and admitted that he

26

1  personally used a firearm in the commission of the attempted murder

2  (R.T. 28-29).

4  **B.**  **Discussion**

6      According to Petitioner, Petitioner's counsel told Petitioner

7  prior to the plea that Petitioner would receive a sentence of eleven

8  to fourteen years if Petitioner pled no contest (id.).  Petitioner

9  contends he understood the alleged proposed deal to offer a seven-year

10 term for the attempted murder and a four-year "midterm" for the

11 firearm use enhancement (Petition, attachment, p. 1).  Petitioner also

12 alleges that the trial judge purportedly violated state law by

13 participating in the plea negotiations, and that the judge supposedly

14 "persuaded" the prosecutor to increase the offer to 17 years,

15 allegedly by "insisting" that the deal include a ten-year firearm

16 enhancement rather than the purported four-year "midterm" on the

17 enhancement (id.).  Petitioner contends that, when the 17-year offer

18 was mentioned in court, Petitioner repeatedly consulted with counsel

19 concerning the alleged discrepancy between that offer and the

20 purported 11-14-year offer (id.).  Petitioner's counsel assertedly

21 told Petitioner that the judge allegedly "had changed the prosecutor's

22 mind" (id.).  Counsel allegedly "implied that he [counsel] would take

23 care of it, which is why Petitioner did not speak up in court" (id.).

24 Petitioner also contends he was unaware that he would have to plead to

25 an assault count, and allegedly believed the deal would leave him with

26 only one "strike" instead of two (id.).

27 ///

28 ///

27

The Superior Court rejected these contentions.  In its June 8, 2007 order, the Superior Court ruled, <u>inter alia</u>, that the plea transcript did not support Petitioner's claim, but rather clearly showed that Petitioner voluntarily and knowingly entered into a plea agreement providing for a 17-year term (Respondent's Lodgment 13, pp. 9-10).  In its December 11, 2009 order, the Superior Court ruled, <u>inter alia</u>, that Petitioner's contention that he would have received a sentence of 11 years but for the court's alleged interference was "completely unsupported" by the record (Respondent's Lodgment 13, p. 13).  The Superior Court observed that the plea transcript clearly established that the prosecution offered a 17-year deal and required Petitioner to plead to two strikes (<u>id.</u>).  The Superior Court stated:

> . . .  The petitioner was asked over and over if he understood the terms of the agreement and if [he] wanted to change his plea.  He was given every opportunity to discuss the decision and the terms of the agreement with counsel, family members, and the court.  He stated unequivocally and unambiguously that he understood the agreement and he voluntarily entered his plea.

(Respondent's Lodgment 13, p. 13).

Where a petitioner has entered a plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel provided effective assistance in advising the petitioner to enter the plea. <u>Hill v. Lockhart</u>, 474 U.S. 52, 56-57 (1985).  In the context of a guilty plea, the analysis of counsel's ineffectiveness "depends as an

1   initial matter, not on whether a court would retrospectively consider
2   counsel's advice to be right or wrong, but on whether that advice was
3   within the range of competence demanded of attorneys in criminal
4   cases." McMann v. Richardson, 397 U.S. 759, 771 (1970).  In
5   determining whether Petitioner's counsel acted ineffectively, the
6   Court employs the standards set forth in Strickland v. Washington, 466
7   U.S. 668 (1984) ("Strickland").

8

9       To establish ineffective assistance of counsel, Petitioner must
10  prove: (1) counsel's representation fell below an objective standard
11  of reasonableness; and (2) there is a reasonable probability that, but
12  for counsel's errors, the result of the proceeding would have been
13  different.  Strickland, 466 U.S. at 688, 694, 697.  A reasonable
14  probability of a different result "is a probability sufficient to
15  undermine confidence in the outcome."  Id. at 694.  "That requires a
16  'substantial,' not just 'conceivable,' likelihood of a different
17  result." Cullen v. Pinholster, 131 S. Ct. at 1403 (quoting Harrington
18  v. Richter, 131 S. Ct. 770, 791 (2011)).  The court may reject the
19  claim upon finding either that counsel's performance was reasonable or
20  the claimed error was not prejudicial.  Id. at 697; Rios v. Rocha, 299
21  F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the
22  Strickland test obviates the need to consider the other.") (citation
23  omitted).

24

25      Review of counsel's performance is "highly deferential" and there
26  is a "strong presumption" that counsel rendered adequate assistance
27  and exercised reasonable professional judgment.  Williams v. Woodford,
28  384 F.3d 567, 610 (9th Cir. 2004), cert. denied, 546 U.S. 934 (2005)

1  (quoting Strickland, 466 U.S. at 689).  The court must judge the

2  reasonableness of counsel's conduct "on the facts of the particular

3  case, viewed as of the time of counsel's conduct."  Strickland, 466

4  U.S. at 690.  The court may "neither second-guess counsel's decisions,

5  nor apply the fabled twenty-twenty vision of hindsight. . . ."

6  Matylinsky v. Budge, 577 F.3d 1083, 1091 (9th Cir. 2009), cert.

7  denied, 130 S. Ct. 1154 (2010) (citation and quotations omitted); see

8  Yarborough v. Gentry, 540 U.S. 1, 8 (2003) ("The Sixth Amendment

9  guarantees reasonable competence, not perfect advocacy judged with the

10 benefit of hindsight.") (citations omitted).  Petitioner bears the

11 burden to show that "counsel made errors so serious that counsel was

12 not functioning as the counsel guaranteed the defendant by the Sixth

13 Amendment."  Harrington v. Richter, 131 S. Ct. at 787 (citation and

14 internal quotations omitted); see Strickland, 466 U.S. at 689

15 (petitioner bears burden to "overcome the presumption that, under the

16 circumstances, the challenged action might be considered sound trial

17 strategy") (citation and quotations omitted).

18

19     A state court's decision rejecting a Strickland claim is entitled

20 to "a deference and latitude that are not in operation when the case

21 involves review under the Strickland standard itself."  Harrington v.

22 Richter, 131 S. Ct. at 785.  "When § 2254(d) applies, the question is

23 not whether counsel's actions were reasonable.  The question is

24 whether there is any reasonable argument that counsel satisfied

25 Strickland's deferential standard."  Id. at 788.

26

27     "In assessing prejudice under Strickland, the question is not

28 whether a court can be certain counsel's performance had no effect on

the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." Id. at 791-92 (citations omitted).  Rather, the issue is whether, in the absence of counsel's alleged error, it is "'reasonably likely'" that the result would have been different.  Id. at 792 (quoting Strickland, 466 U.S. at 696).  "The likelihood of a different result must be substantial, not just conceivable."  Id.

Petitioner's claim that counsel ineffectively misled Petitioner concerning the terms of the plea offer lacks merit under the applicable standards of review.  In support of his contention that the supposed original offer allegedly proposed a seven-year term for attempted murder and a purported four-year "midterm" on the firearm enhancement, Petitioner references the portion of the transcript, quoted above, in which the prosecutor described the offer to Petitioner's counsel as follows:

> Count 1 for the midterm.  Plus we would change the gun
> allegation from the 10-20-life to the 3-4-10.  It would be
> midterm, plus 10 years, for 17 years.  Then he would plead
> to the 245(a)(2) against the second victim, and it would run
> concurrent.

(Supplemental Reply, p. 7, citing R.T. 20).  The context of these statements, quoted above, makes it clear that the offer was for a midterm sentence on Count 1, for a total of seventeen years.  Nothing in the record shows that there ever was any offer for eleven to fourteen years based on a four-year midterm for the gun enhancement.

The plea transcript, quoted above, also clearly shows that Petitioner was told that the offer required Petitioner to plead guilty to the assault charge, giving Petitioner two strikes, not one.

Additionally, nothing in the record supports Petitioner's allegations that the judge participated in any discussions, on or off the record, in which the court purportedly persuaded the prosecutor to increase the offer's proposed prison term.  The fact that the judge may have suggested that the ten-year term be imposed pursuant to California Penal Code section 12022.53(b) instead of California Penal Code section 12022.5(a) is immaterial.  The court made it quite clear to Petitioner that Petitioner would receive a ten-year term on the gun enhancement if Petitioner pled no contest.[10]

Therefore, Petitioner has not shown that his counsel acted ineffectively in failing to object to a purported alteration in the terms of the plea offer or to the court's allegedly improper involvement in the plea negotiations, or in failing allegedly to advise Petitioner "correctly" regarding the terms of the plea.  See Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996), cert. denied, 519 U.S. 1142 (1997) ("the failure to take a futile action can never be deficient performance"); see also Shah v. United States, 878 F.2d 1156, 1162 (9th Cir.), cert. denied, 493 U.S. 869 (1989) ("[T]he failure to raise a meritless legal argument does not constitute

_____

[10]    In any event, Petitioner's allegation that the trial judge assertedly violated state law by participating in plea negotiations does not state a cognizable claim for federal habeas relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

ineffective assistance of counsel"; citation and internal quotations omitted).

        For the foregoing reasons, the Superior Court's rejection of the claims in Ground One was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court.  See 28 U.S.C. § 2254(d); Harrington v. Richter, 131 S. Ct. at 785-87.  Petitioner is not entitled to habeas relief on Ground One of the Petition.

**III.  Petitioner's Plea Bars Habeas Relief on Grounds Three, Four and Eight of the Petition.**

        In Ground Three of the Petition, Petitioner alleges that trial counsel ineffectively failed to move for a pretrial lineup and to suppress Peele's allegedly unconstitutional identification of Petitioner.  In Ground Four of the Petition, Petitioner alleges that trial counsel ineffectively failed to challenge Petitioner's arrest.  Ground Eight alleges a claim of actual innocence.  As discussed below, Petitioner's plea bars habeas relief on these claims.

        Under California law, the legal effect of Petitioner's nolo contendere plea and admission of the gun allegation was the same as that accorded to a plea of guilty.  See Cal. Penal Code § 1016; People v. Bradford, 15 Cal. 4th 1229, 1374-75, 65 Cal. Rptr. 2d 145, 939 P.2d 259 (1997), cert. denied, 523 U.S. 1118 (1998); see also People v. Westbrook, 43 Cal. App. 4th 220, 224, 51 Cal. Rptr. 2d 1 (1996) ("Admissions of enhancements are subject to the same principles as

guilty pleas").  A habeas petitioner who pleads guilty may only attack the voluntary and intelligent nature of the plea.  <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973).

> A plea of guilty and the ensuing conviction
> comprehend all of the factual and legal elements
> necessary to sustain a binding, final judgment of
> guilt and a lawful sentence.  Accordingly, when
> the judgment of conviction upon a guilty plea has
> become final and the offender seeks to reopen the
> proceedings, the inquiry is ordinarily confined to
> whether the underlying plea was both counseled and
> voluntary.  If the answer is in the affirmative,
> then the conviction and the plea, as a general
> rule, foreclose the collateral attack.

<u>United States v. Broce</u>, 488 U.S. 563, 569 (1989) (guilty pleas foreclosed double jeopardy challenge to convictions); <u>see also</u> <u>Tollett v. Henderson</u>, 411 U.S. at 267; <u>United States v. Cazares</u>, 121 F.3d 1241, 1246-48 (9th Cir. 1997) (guilty plea admits facts essential to the validity of the conviction).

Petitioner's plea forecloses any claims of pre-plea ineffective assistance of counsel unrelated to the validity of the plea, including Petitioner's claims that counsel failed to suppress Peele's identification, failed to seek a pretrial lineup and failed to challenge Petitioner's arrest.  See <u>United States v. Friedlander</u>, 217 Fed. App'x 664 (9th Cir. 2007) (alleged ineffectiveness in preparation

and submission of suppression motions waived by plea); Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994), cert. denied, 516 U.S. 976 (1995) (claim of ineffectiveness in failing to prevent use of petitioner's confession at trial foreclosed by plea); United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (claim that counsel was ineffective during in camera hearing foreclosed by plea); Peyton v. Adams, 2009 WL 3200689, at *4 (C.D. Cal. Oct. 6, 2009) ("claims of ineffective assistance that are based on acts or omissions of counsel that preceded [petitioner's] plea, and are not related to the validity of the plea, cannot be considered on federal habeas review") (citation omitted); Watkins v. Valadez, 2007 WL 512442, at *10-11 (E.D. Cal. Feb. 12, 2007), adopted, 2007 WL 776714 (E.D. Cal. Mar. 12, 2007) (claim that counsel ineffectively failed to challenge legality of arrest foreclosed by plea); United States v. Chavez, 2002 WL 31971945, at *3-4 (D. Or. July 3, 2002) (alleged failure to file pretrial motions to investigate, to request discovery, and to cross-examine arresting officers foreclosed by plea). Therefore, Petitioner is not entitled to habeas relief on Grounds Three and Four of the Petition.[11]

Petitioner's plea also precludes his claim of actual innocence asserted in Ground Eight. See United States v. Cazares, 121 F.3d at 1246-48 (guilty plea admits facts essential to the validity of the conviction); see also United States v. Dungee, 228 Fed. App'x 298, 303 (4th Cir. 2007) ("A knowing and voluntary guilty plea 'conclusively

---

[11]    Additionally, were Ground Two not procedurally defaulted, Petitioner's plea would preclude relief on that ground as well. See Watkins v. Valadez, 2007 WL 512442, at *10-11 (plea barred claim that counsel ineffectively failed to file motion to dismiss information).

establishes the elements of the offense and the material facts
necessary to support the conviction,' and 'constitutes a waiver of all
nonjurisdictional defects,' such as claims of actual innocence.")
(citations omitted); Hernandez v. Mendoza-Powers, 2005 WL 2089807, at
*5 (E.D. Cal. Aug. 29, 2005) ("Petitioner's claim of actual innocence
is a pre-plea matter which is barred by *Tollet[t]*"); People v. McNabb,
228 Cal. App. 3d 462, 470-71, 279 Cal. Rptr. 11 (1991) ("the issue of
guilt or innocence is waived by a guilty plea").

For the foregoing reasons, Petitioner is not entitled to habeas
relief on Grounds Three, Four and Eight of the Petition.[12]

**IV.   Petitioner Is Not Entitled to Habeas Relief on Ground Five of the
Petition.**

In Ground Five, Petitioner alleges that Petitioner's appellate
counsel ineffectively failed to raise on appeal the issues asserted in
Grounds One, Two, Three and Four of the Petition, and failed to advise
Petitioner to file a supplemental brief.

The standards set forth in Strickland govern claims of
ineffective assistance of appellate counsel.  See Smith v. Robbins,
528 U.S. 259, 285-86 (2000); Bailey v. Newland, 263 F.3d 1022, 1028

---

[12]   To the extent Grounds Four and Eight are unexhausted,
the Court denies them as not "colorable" for the reasons stated
herein.  See Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir.
2005), cert. denied, 546 U.S. 1172 (2006) (court may deny on the
merits an unexhausted claim that is not "colorable"); 28 U.S.C.
§ 2254(b)(2).

(9th Cir. 2001), <u>cert. denied</u>, 535 U.S. 995 (2002).  Appellate counsel has no constitutional obligation to raise all non-frivolous issues on appeal.  <u>Pollard v. White</u>, 119 F.3d 1430, 1435 (9th Cir. 1997).  "A hallmark of effective appellate counsel is the ability to weed out claims that have no likelihood of success, instead of throwing in a kitchen sink full of arguments with the hope that some argument will persuade the court."  <u>Id.</u>  Appellate counsel's failure to raise an issue on direct appeal cannot constitute ineffective assistance when "the appeal would not have provided grounds for reversal."  <u>Wildman v. Johnson</u>, 261 F.3d 832, 840 (9th Cir. 2001) (citation omitted).

Where analysis of a claim of ineffective assistance of trial counsel would require recourse to matters outside the appellate record, California law requires that the claim be asserted in a petition for writ of habeas corpus, not on direct appeal.  <u>See, e.g.</u>, <u>People v. Mendoza Tello</u>, 15 Cal. 4th 264, 267-68, 62 Cal. Rptr. 2d 437, 933 P.2d 1134 (1997); <u>People v. Pope</u>, 23 Cal. 3d 412, 426-28, 152 Cal. Rptr. 732, 590 P.2d 859 (1979).  "[B]ecause, in general, it is inappropriate for an appellate court to speculate as to the existence or nonexistence of a tactical basis for a defense attorney's course of conduct when the record on appeal does not illuminate the basis for the attorney's challenged acts or omissions, a claim of ineffective assistance is more appropriately made in a habeas corpus proceeding, in which the attorney has the opportunity to explain the reasons for his or her conduct."  <u>People v. Wilson</u>, 3 Cal. 4th 926, 936, 13 Cal. Rptr. 2d 259, 838 P.2d 1212 (1992), <u>cert. denied</u>, 507 U.S. 1006 (1993).  Here, the claims raised in Grounds One and Four concern matters outside the record.  Hence, appellate counsel was not

1    ineffective in failing to raise these claims on direct appeal.

2

3        Furthermore, to the extent Petitioner contends that appellate

4    counsel ineffectively failed to raise on appeal the claims alleged in

5    Grounds Two, Three and Four of the Petition, Petitioner's claim of

6    ineffective assistance lacks merit.  In California, "when a defendant

7    pleads guilty or no contest and is convicted without a trial, only

8    limited issues are cognizable on appeal."  In re Chavez, 30 Cal. 4th

9    643, 649, 134 Cal. Rptr. 2d 54, 68 P.3d 347 (2003).  "A guilty plea

10   admits every element of the charged offense and constitutes a

11   conviction [citations], and consequently issues that concern the

12   determination of guilt or innocence are not cognizable. [citations]."

13   Id.  Petitioner's appellate counsel reasonably could have concluded

14   that Petitioner's plea foreclosed assertion on appeal of the claims

15   raised in Grounds Two, Three and Four of the present Petition.  See

16   People v. Hunter, 100 Cal. App. 4th 37, 42-43, 122 Cal. Rptr. 2d 229

17   (2002) (challenge to trial court's denial of defendant's pretrial

18   discovery motion barred by defendant's plea); People v. Tillery, 211

19   Cal. App. 3d 1569, 1581, 260 Cal. Rptr. 320 (1989) (plea precluded

20   appellate review of denial of motion to dismiss charge for lack of

21   evidence); People v. Mink, 173 Cal. App. 3d 766, 769-70, 219 Cal.

22   Rptr. 291 (1985) (defendant's guilty plea barred appeal of trial

23   court's denial of motion to suppress allegedly suggestive

24   identification); People v. Roper, 144 Cal. App. 3d 1033, 1038-39, 193

25   Cal. Rptr. 15 (1983) (claim that trial court erred in denying motion

26   to set aside information for want of probable cause held barred by

27   plea); People v. Stearns, 35 Cal. App. 3d 304, 305-06, 110 Cal. Rptr.

28   711 (1973) (no appeal lies from order denying motion challenging

fairness of lineup, where defendant pled guilty).  Appellate counsel

cannot be faulted for failing to raise a fruitless challenge to the

validity of Petitioner's plea.  See Wilcox v. Hopkins, 249 F.3d 720,

724 (8th Cir. 2001), cert. denied, 534 U.S. 1139 (2002) ("Because

Wilcox's plea was knowing and voluntary, he cannot establish that the

result of his direct appeal would have been different if appellate

counsel had challenged the plea."); see generally Rupe v. Wood, 93

F.3d at 1445; Shah v. United States, 878 F.2d at 1162.


Nor was appellate counsel ineffective for assertedly failing to

advise Petitioner to file a supplemental brief on appeal.  Counsel

reasonably could have concluded that the Court of Appeal would rebuff

any effort by Petitioner to file a pro se supplemental appellate

brief.  See People v. Clark, 3 Cal. 4th 41, 10 Cal. Rptr. 2d 554, 833

P.2d 561 (1992), cert. denied, 507 U.S. 993 (1993) ("Motions and

briefs of parties represented by counsel must be filed by such

counsel.") (citation omitted); People v. Scott, 64 Cal. App. 4th 550,

572, 75 Cal. Rptr. 2d 315 (1998), cert. denied, 528 U.S. 1114 (2000)

("'The general rule that a defendant who is represented by an attorney

of record will not be personally recognized by the court in the

conduct of his case applies to the filing of pro se documents on

appeal.'") (citation omitted); cf. also Martinez v. Court of Appeal of

California, Fourth Appellate District, 528 U.S. 152, 162 (2000)

(defendant does not have constitutional right to represent himself on

direct appeal).[13]   Moreover, Petitioner has failed to demonstrate a reasonable probability that a different result would have ensued if he had submitted (and the Court of Appeal had accepted) a pro se supplemental brief.

For the foregoing reasons, Petitioner is not entitled to habeas relief on Ground Five of the Petition.[14]

## V.   Petitioner Is Not Entitled to Habeas Relief on Grounds Six and Seven of the Petition.

In Grounds Six and Seven, Petitioner alleges that his counsel rendered ineffective assistance, by assertedly: (1) informing Petitioner that claimed alibi witness LaTonya Strickland was not available to testify at trial; and (2) failing to inform Petitioner, prior to the plea, that alleged eyewitness George Cowell assertedly could identify someone other than Petitioner as the shooter, and hence allegedly could attest to Petitioner's "actual innocence."[15]   The Superior Court, the only state court to address these claims, rejected

---

[13]   Nothing in the record shows that California's exception to this rule for pro se filings (regarding representation and requests for new counsel, see People v. Scott, 64 Cal. App. 4th at 572), applies in the present case.

[14]   To the extent Grounds Five is unexhausted, the Court denies Ground Five as not "colorable" for the reasons stated herein.   See Cassett v. Stewart, 406 F.3d at 623-24; 28 U.S.C. § 2254(b)(2).

[15]   Ground Six asserts that counsel's alleged ineffectiveness rendered Petitioner's plea invalid in asserted violation of due process; Ground Seven alleges a related claim of ineffective assistance.

the claims on the merits (Respondent's Lodgment 13, p. 14).  The
Superior Court stated that Petitioner had not provided factual
support, in the form of credible affidavits or declarations,
sufficient to make a prima facie showing of prejudicial error, and
that there was no evidence showing that Petitioner would have "enjoyed
a better outcome but for counsel's deficient conduct" (id.).


    As indicated above, this Court previously ordered an evidentiary
hearing on these claims.  However, on April 4, 2011, the United States
Supreme Court issued its decision in Cullen v. Pinholster, 131 S. Ct.
1388 (2011) ("Pinholster").  In Pinholster, the Court held that review
under section 2254(d)(1) "is limited to the record that was before the
state court that adjudicated the claim on the merits." Pinholster,
131 S. Ct. at 1398.  Under Pinholster, therefore, the determination of
whether section 2254(d)(1) forbids habeas relief should precede the
federal habeas court's consideration of any evidence that was not
before the state court.  See id. at 1401.


    The record before the Superior Court consisted of documents
attached to the amended Superior Court petition identified as Exhibits
1, 2 and 3, all of which were attached to the original Superior Court
petition, and a page labeled "Exhibit 4" to which no documents were
attached (see Respondent's Lodgment 15).  For the following reasons,
Petitioner has not shown that the Superior Court's rejection of these
claims was unreasonable in light of the evidence before it, and thus
this federal Court must deny habeas relief under section 2254(d)(1).
///
///

**A.   Alleged Failure to Inform Petitioner of Supposed**
    **Availability of Purported Alibi Witness**

In support of Petitioner's claim that his counsel ineffectively failed to inform Petitioner of LaTonya Strickland's alleged availability to testify at trial, Petitioner submitted the following evidence to the Superior Court:

1.   Petitioner's sworn Petition, in which Petitioner stated, inter alia, that: (a) Petitioner's counsel purportedly told Petitioner that Strickland was unavailable to testify at trial; (b) following the plea, Petitioner allegedly obtained "reports" from counsel and learned that Strickland allegedly had been available to testify and that counsel allegedly knew of her purported availability; and (c) Strickland allegedly told Petitioner's family that she had been available and willing to testify (Respondent's Lodgment 15, pp. 3.3, 3.12-13, 3.23);

2.   A copy of an alleged "Subpoena for Appearance of Witness" purportedly ordering Strickland's appearance at trial, signed by Petitioner's counsel, and bearing a proof of service allegedly showing that the subpoena was served on Strickland's father (id., Ex. 1); and

3.   A purported "Investigation Request," dated June 13, 2005, in which Petitioner's counsel allegedly: (a) recorded that counsel assertedly had received a telephone call from "Tanya Strickland," a purported "alibi witness," who reportedly said she was with Petitioner when the shooting occurred; and (b) asked the investigator to call

42

Strickland, ask questions, and obtain contact information, adding that Strickland might be "skittish" (id., Exhibit 2); and

    4.  A page of defense counsel's alleged notes, dated the date of Petitioner's plea, stating that "LaTonya will come in, but she is weak as an alibi wit" (id., Exhibit 3).

    Based on this evidence, the Superior Court's decision on the issue regarding the alleged alibi witness was not unreasonable.  Even crediting Petitioner's allegation that his counsel falsely informed Petitioner that Strickland was unavailable to testify, Petitioner's submissions to the Superior Court failed to demonstrate a reasonable probability that, absent counsel's allegedly unreasonable conduct, Petitioner would not have entered his plea.  Although Petitioner generally alleged that Strickland was an "alibi" witness, Petitioner did not submit to the Superior Court Strickland's sworn statement or any other evidence establishing a specific factual basis for Strickland's proposed "alibi" testimony.  "To establish prejudice for failure to call alibi witnesses, the petitioner must present evidence sufficient to establish what the witnesses' testimony would have been." Wheaton v. Kernan, 288 Fed. App'x 316, 317 (9th Cir.), cert. denied, 129 S. Ct. 580 (2008) (citation, internal quotations and brackets omitted); see also Vaden v. Runnels, 2011 WL 1252582, at *1 (9th Cir. Apr. 5, 2011) (rejecting claim that counsel ineffectively failed to call expert witness, where petitioner did not submit a declaration from any expert describing the proposed testimony); Dows v. Wood, 211 F.3d 480, 486 (9th Cir.), cert. denied, 531 F.3d 908 (2000) (claim of ineffective assistance insufficient where petitioner

did not submit evidence that alleged alibi witness would have provided

testimony helpful to the defense other than petitioner's self-serving

affidavit).  Petitioner's conclusory allegations that Strickland

supposedly would have provided an alibi for Petitioner were, and are,

insufficient.  See Ceja v. Stewart, 97 F.3d 1246, 1255 (9th Cir.

1996), cert. denied, 522 U.S. 971 (1997) (rejecting Strickland claim

where petitioner failed to explain what compelling evidence would have

been uncovered had counsel interviewed more witnesses); Zettlemoyer v.

Fulcomer, 923 F.2d 284, 298 (3d Cir.), cert. denied, 502 U.S. 902

(1991) (petitioner cannot satisfy Strickland standard by "vague and

conclusory allegations that some unspecified and speculative testimony

might have established his defense").  With so little evidence to go

on, the Superior Court was not unreasonable in ruling that Petitioner

has failed to demonstrate the requisite prejudice from the alleged

misrepresentation regarding Strickland's availability.


   B.   **Alleged Failure to Investigate 911 Caller**


        In support of Petitioner's claim that his counsel ineffectively

failed to investigate alleged 911 caller George Cowell, Petitioner

submitted to the Superior Court the June 13, 2005 "Investigation

Request" mentioned above (Respondent's Lodgment 14, Exhibit 1, second

page).  In this "Investigation Request," Petitioner's counsel asserted

that counsel had received a tape of several 911 calls, and that "[o]ne

witness supposedly saw the actual shooting," a witness whom counsel

allegedly believed was named George Cowell (id.).  Petitioner's

counsel asserted that Cowell was reluctant to leave information, and

asked the investigator to contact Cowell (id.).

1   Petitioner did not submit any evidence concerning what Cowell
2   allegedly saw, if anything, or how Cowell's information would have
3   aided Petitioner.  Petitioner's speculation that Cowell's information
4   would have advanced Petitioner's defense was, and is, insufficient to
5   show prejudice.  See Bible v. Ryan, 571 F.3d 860, 871 (9th Cir. 2009),
6   cert. denied, 130 S. Ct. 1745 (2010) (speculation insufficient to show
7   Strickland prejudice).  Therefore, Petitioner failed to demonstrate to
8   the Superior Court a reasonable probability that, had counsel
9   investigated Cowell, Petitioner would not have entered a plea.  The
10  Superior Court reasonably rejected this claim based on the evidence
11  before it.

12
13      C.   **Conclusion**
14
15      For the reasons discussed above, the Superior Court's rejection
16  of Petitioner's claims contained in Grounds Six and Seven of the
17  present Petition was not objectively unreasonable on the record before
18  that court.  Because Petitioner has not shown that the Superior Court
19  acted unreasonably, Petitioner has not shown an entitlement to habeas
20  relief under the standard set forth in 28 U.S.C. section 2254(d).
21  Accordingly, Petitioner is not entitled to habeas relief on Grounds
22  Six and Seven of the Petition, and this Court need not conduct an
23  evidentiary hearing on those claims.  See Pinholster, 131 S. Ct. at
24  1398.
25  ///
26  ///
27  ///
28  ///

**VI.   Petitioner Is Not Entitled to Habeas Relief on Ground Nine of the**
       **Petition.**

       As indicated above, at the preliminary hearing the court
dismissed Count Three of the Complaint, which had charged an assault
on Knighton (C.T. 44).  The prosecution realleged this charge as Count
Three in the Information (see C.T. 35).  Thereafter, however, several
minute orders in the Clerk's Transcript erroneously recorded that
Count Three charged possession of a firearm by an ex-felon in
violation of California Penal Code section 12021(a)(1), rather than
the assault on Knighton (see C.T. 48, 50, 52, 58, 60).  The minute
order recording the plea and the abstract of judgment contained this
incorrect information as well (see C.T. 61-62).  The Superior Court
corrected these errors by nunc pro tunc orders issued on December 11,
2009 and April 17, 2010 (Respondent's Lodgment 13, pp. 12, 13-15).

       In Ground Nine, Petitioner alleges that the trial court
sentenced Petitioner to a three-year term on a charge of aggravated
assault on Knighton, which allegedly was not charged in the
Information.  The Superior Court rejected this claim, ruling that the
prosecution was entitled to reallege Count Three in the Information
pursuant to California Penal Code section 1387, and that the minute
order and abstract of judgment had contained an "obvious clerical
error" which the court had corrected (Respondent's Lodgment 13,
pp. 13-14).

       Matters relating to sentencing and serving of a sentence
generally are governed by state law and do not raise a federal

46

constitutional question.  See Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989), cert. denied, 499 U.S. 963 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986); Sturm v. California Adult Authority, 395 F.2d 446, 448 (9th Cir. 1967), cert. denied, 395 U.S. 947 (1969).  Under narrow circumstances, however, the misapplication of state sentencing law may violate due process.  See Richmond v. Lewis, 506 U.S. 40, 50 (1992).  "[T]he federal, constitutional question is whether [the error] is so arbitrary or capricious as to constitute an independent due process" violation.  Id. (internal quotation and citation omitted); see also Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.").

Petitioner has shown no such fundamental unfairness, because the record supports the Superior Court's conclusion.  First, the dismissal of Count Three at the conclusion of the preliminary hearing did not prevent the prosecution from refiling the dismissed charge.  See Cal. Penal Code § 1387(a); People v. Ghent, 43 Cal. 3d 739, 774, 239 Cal. Rptr. 82, 739 P.2d 1250 (1987), cert. denied, 485 U.S. 929 (1988); People v. Uhlemann, 9 Cal. 3d 662, 666-69, 108 Cal. Rptr. 657, 511 P.2d 609 (1973); De Anda v. City of Long Beach, 7 F.3d 1418, 1422 & n.6 (9th Cir. 1993).  Second, the plea transcript, set forth above, makes it very clear that everyone, including Petitioner, understood that Petitioner was pleading no contest not only to the attempted murder but also to the assault on Knighton.

///

///

Because the Superior Court's denial of this claim was not contrary to, or an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court, Petitioner is not entitled to habeas relief on this claim.  See 28 U.S.C. § 2254(d); Harrington v. Richter, 131 S. Ct. at 785-87.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying and dismissing the Petition with prejudice.

DATED:  June 7, 2011.


_____/S/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

If the District Judge enters judgment adverse to Petitioner, the District Judge will, at the same time, issue or deny a certificate of appealability. Within twenty (20) days of the filing of this Report and Recommendation, the parties may file written arguments regarding whether a certificate of appealability should issue.

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  FREDERICK LEE,                    )        NO. CV 08-3248-PA(E)
                                      )
12                  Petitioner,       )
                                      )
13       v.                           )        ORDER ADOPTING FINDINGS,
                                      )
14  VICTOR M. ALMAGER, Warden,        )        CONCLUSIONS AND RECOMMENDATIONS OF
                                      )
15                  Respondent.       )        UNITED STATES MAGISTRATE JUDGE
                                      )
16  _____ )

17

18       Pursuant to 28 U.S.C. section 636, the Court has reviewed the

19  Petition, all of the records herein and the attached Report and

20  Recommendation of United States Magistrate Judge.  The Court approves

21  and adopts the Magistrate Judge's Report and Recommendation.

22

23       IT IS ORDERED that Judgment be entered denying and dismissing the

24  Petition with prejudice.

25  ///

26  ///

27  ///

28  ///

1    IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2  the Magistrate Judge's Report and Recommendation and the Judgment

3  herein on Petitioner, Petitioner's counsel, and counsel for

4  Respondent.

5

6    LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8    DATED: _____, 2011.

9

10

11    _____

12                      PERCY ANDERSON
                UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FREDERICK LEE,                          )        NO. CV 08-3248-PA(E)
                                        )
                Petitioner,             )
                                        )
        v.                              )        JUDGMENT
                                        )
VICTOR M. ALMAGER, Warden,              )
                                        )
                Respondent.             )
                                        )
_____)


        Pursuant to the Order Adopting Findings, Conclusions and

Recommendations of United States Magistrate Judge,


        IT IS ADJUDGED that the Petition is denied and dismissed

with prejudice.

        DATED: _____, 2011.


                            _____
                                      PERCY ANDERSON
                            UNITED STATES DISTRICT JUDGE